DOCKET NO. 24-10259

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

JF,

Appellant/Plaintiff Below,

v.

CARNIVAL CORPORATION,
A Panamanian Corporation d/b/a
CARNIVAL CRUISE LINES,
Appellee/Defendant Below

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 22-21332-CIV-MARTINEZ
(Hon. Jose Martinez)

## INITIAL BRIEF OF APPELLANT

EDWARD S. SCHWARTZ
Florida Bar No. 346721
eschwartz@gslawusa.com
filing@gslawusa.com
zdiaz@gslawusa.com
GERSON & SCHWARTZ, P.A.
Attorneys for Appellant
1980 Coral Way
Miami, FL 33145-2624
Telephone: (305) 371-6000

## APPELLANT'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Appellant, JF, through undersigned counsel, hereby certifies the following as a complete list of the persons and entities having an interest or potential interest in the outcome of this appeal, listed in alphabetical order by surname or business name:

1. Becerra, The Honorable Jacqueline – United States Magistrate Judge.

2. Cabeza, Lauren- Counsel for Appellee/Defendant.

3. Carnival Corporation d/b/a Carnival Cruise Lines – Appellee/Defendant.

4. Gerson, Nicholas – Counsel for Appellant/Plaintiff.

5. Gerson, Philip M. – Counsel for Appellant/Plaintiff.

6. GERSON & SCHWARTZ, P.A. – Counsel for Appellant/Plaintiff.

7. JF – Appellant/Plaintiff.

8. Martinez, The Honorable Jose E. – District Court Judge.

9. Mase, Curtis, Esq.– - Counsel for Appellee/Defendant.

10. MASE SEITZ BRIGGS, P.A. - Counsel for Appellee/Defendant.

11. Rauh, Tyler – Counsel for Appellee/Defendant.

12. Robinson, Charlotte – Counsel for Appellee/Defendant.

13. Schwartz, Edward S. – Counsel for Appellant/Plaintiff.

14. Seitz, William – Counsel for Appellee/Defendant.

C-1 of 2

## CORPORATE DISCLOSURE STATEMENT

Appellant is not a corporation or business entity.  Accordingly, there are no

parent corporations or publicly traded corporations holding stock in the Appellant.

(THIS SECTION INTENTIONALLY LEFT BLANK)

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

# STATEMENT REGARDING ORAL ARGUMENT

This case is an appeal from an adverse final summary judgment. The issue on appeal is whether, as a matter of law, the sexual assault on J.F. giving rise to this action was foreseeable to CARNIVAL. Oral argument will be helpful to the Court in elucidating the legal principles involved and their application to the facts of this case.

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

# TABLE OF CONTENTS

**ITEM**                                                      **PAGE**

Certificate of Interested Persons and Corporate

Disclosure Statement ……………………………………... C-1

Statement Regarding Oral Argument ……………………... i

Table of Citations …………………..………………... iv

Statement of Subject Matter

and Appellate Jurisdiction …………………………… vi

Statement of the Issue …………………………………... 1

Statement of the Case …………………………………… 2

Summary of Argument …………………………………… 8

Argument …………………………………………... 12

**WHERE CARNIVAL ADMITTED TO RECEIVING REPORTS OF 102 INCIDENTS OF PASSENGER ON PASSENGER SEXUAL MISCONDUCT, FLEETWIDE, DURING THE THREE YEARS PRIOR TO THE SEXUAL ASSAULT ON J.F., AND 54 OF THOSE 102 INCIDENTS OCCURRED IN PASSENGER STATEROOMS AS THE ASSAULT ON J.F. DID, THE DISTRICT COURT ERRED IN HOLDING THE ASSAULT UNFORESEEABLE TO CARNIVAL AS A MATTER OF LAW AND ACCORDINGLY ENTERING SUMMARY JUDGMENT FOR CARNIVAL.**

Conclusion ……………………………………………… 29

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 • Broward (954) 845-0535 • Fax (305) 371-5749 • Toll Free (877) 475-2905
www.injuryattorneyfla.com

Certificate of Compliance …………………………………… 30

Certificate of Service ……………………………………… 31

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

# TABLE OF CITATIONS
## CASES

**CASE**                                                    **PAGE(S)**

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ……………………………….…..... 13

*Brady v. Carnival Corp.,*
33 F.4th 1278 (11th Cir. 2022) ……………………….. 13, 21, 22

*Carroll v. Carnival Corp.,*
955 F.3d 1260 (11th Cir. 2020) ………………………  22

*Chaparro v. Carnival Corp.,*
693 F.3d 1333 (11th Cir. 2012) ……………………….. 14, 15, 16,
                                              17, 18, 19

*Chapman v. American Cyanamid Co.,*
861 F.2d 1515 (11th Cir. 1988) ……………………….  13

*Clark v. Coats & Clark, Inc.,*
929 F.2d 604 (11th Cir. 1991) ………………………...  13

*Fuentes v. Classica Cruise Operator Ltd.,*
32 F.4th 1311 (11th Cir. 2022) ……………………….  17, 18, 19

*Guevara v. NCL (Bahamas) Ltd.,*
920 F.3d 710 (11th Cir. 2019) ………………………… 13, 22

*H.S. v. Carnival Corp.,*
727 Fed. Appx. 1003 (11th Cir. 2018) ………………….. 18, 19. 21, 22

*K.T. v. Royal Caribbean Cruises, Ltd.,*
931 F.3d 1041 (11th Cir. 2019) ……………………….. 15, 16, 17,
                                              19, 20

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 • Broward (954) 845-0535 • Fax (305) 371-5749 • Toll Free (877) 475-2905
www.injuryattorneyfla.com

| CASE | PAGE(S) |
| --- | --- |

*McIlwain v. Royal Caribbean Cruises, Ltd.*,
2023 U.S. Dist LEXIS 109238,
2023 WL 4117109 (S.D. Fla. Case No. 22-CV-24025-PCH) .. 16

*Sorrels v. NCL (Bahamas) Ltd.*,
796 F.3d 1275 (11th Cir. 2015) ………………………… 18, 20

## STATUTES AND OTHER AUTHORITY

| AUTHORITY | PAGE(S) |
| --- | --- |

28 U.S.C. §1291 …………………………………... vi

28 U.S.C. §1333 …………………………………... vi

Fed. R. Civ. Pro. 4(a)(i)(A) …………………………. vi

Fed. R. Civ. Pro. 12(b)(6) ………………………… 14

Fed. R. App. Pro. 32(a)(7(B) …………………………. 30

Fed. R. Civ. Pro. 56 ………………………………… 12

Fed. R. Civ. Pro. 56(a) ……………………………… 12

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 • Broward (954) 845-0535 • Fax (305) 371-5749 • Toll Free (877) 475-2905
www.injuryattorneyfla.com

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

The district court had subject matter jurisdiction in admiralty, under 28 U.S.C. §1333. The sexual assault on Appellant J.F. from which this action arose occurred on a cruise ship operating in navigable waters, and J.F.'s claim arose out of a traditional maritime activity, the operation of a passenger cruise ship. (ECF 11 at 2 ¶4).

This Court has appellate jurisdiction pursuant to 28 U.S.C. §1291, since the Appellant is appealing from a final judgment, specifically a final summary judgment, in favor of Appellee. The adverse judgment was entered on December 27, 2023, and the Appellant filed a timely notice of appeal on January 23, 2024, well with the applicable thirty-day deadline. (ECF 186, ECF 187, ECF 188); Fed. R. Civ. Pro. 4(a)(1)(A).

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 • Broward (954) 845-0535 • Fax (305) 371-5749 • Toll Free (877) 475-2905
www.injuryattorneyfla.com

## STATEMENT OF THE ISSUE

**WHERE CARNIVAL ADMITTED TO RECEIVING REPORTS OF 102 INCIDENTS OF PASSENGER ON PASSENGER SEXUAL MISCONDUCT, FLEETWIDE, DURING THE THREE YEARS PRIOR TO THE SEXUAL ASSAULT ON J.F., AND 54 OF THOSE 102 INCIDENTS OCCURRED IN PASSENGER STATEROOMS AS THE ASSAULT ON J.F. DID, THE DISTRICT COURT ERRED IN HOLDING THE ASSAULT UNFORESEEABLE TO CARNIVAL AS A MATTER OF LAW AND ACCORDINGLY ENTERING SUMMARY JUDGMENT FOR CARNIVAL.**

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

## STATEMENT OF THE CASE

In August of 2019, J.F., a minor age 15, was a passenger onboard the CARNIVAL passenger cruise vessel "HORIZON." (ECF 87-1 at 10:6-14, 22:1-2). The HORIZON at the time had a passenger capacity of over 3900 and fifteen decks; at least twelve decks included passenger staterooms. (ECF 87-10 at 70:11-14; ECF 87-11). For this passenger load there were seven onboard security officers assigned on each shift. (ECF 87-9 at 58:4-11). During the shift from midnight to 1:00 A.M., three of the seven security officers were assigned to the onboard nightclub and one was assigned to fire watch duty; only three roving officers to patrol fifteen decks. (ECF 87-10 at 70:11-14; ECF 114-1 at 62:4-5, 70:3-6, 71:11-72:1). CARNIVAL below claimed that there were actually eight rather than seven onboard security officers working at the material time, when J.F. was assaulted as described below, and that the reference to seven was the result of a "typo" on the ship's security log. (ECF 127 at 6 ¶143; 127-3 at 84 :6-86:14). CARNIVAL also suggested that the ship's officers could redirect security officers from their fixed postings, which it did not deny were in effect as reflected by the security log, to roving patrols "if they believed there was a need to do so." CARNIVAL did not suggest, however, that ship's security had actually redeployed officers posted to the nightclub and other fixed positions to provide additional roving patrols; nor did CARNIVAL contend

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

that there were more than three rovers for the fifteen decks on the HORIZON at the time of the assault. (ECF 127 at 6 ¶143). J.F.'s maritime operations and security expert, Charles Kinnear, opined that this level of onboard security was inadequate and recommended adoption of a curfew for underage passengers. (ECF 90-1 at 11 ¶¶ 4, 5(f).).

During her voyage on the HORIZON, J.F. patronized Club O2, an onboard club intended for use by teenage passengers, between the ages of fifteen and seventeen. (ECF 87:1 at 46:1-2 ; ECF 87-2 at 114:9-19). At the club J.F. met various minor passengers, including one Zion Emery. (ECF 87-1 at 57:5-14, 72:17-19; ECF 87-6 at 15:3, 28:6-8, 35:19-24).

On August 27, 2019, Zion Emery attempted to smuggle onboard a bottle of liquor he had obtained during a shore excursion. He concealed it underneath his clothing. (ECF 102-1 at 13:14-15:10, 16:12-14, 19:1-13, 19:25-20:11, 22:10-19, 24:18-25:4).[1] This smuggling attempt was a violation of CARNIVAL policies prohibiting passengers from bringing onboard alcoholic beverages not provided or

---

[1] CARNIVAL claimed below that there was some ambiguity whether the alcohol smuggling incident happened before or after the assault on J.F. (ECF 127 at 2 ¶132). Even CARNIVAL concedes, however, that Zion Emery's grandmother testified in her deposition that the smuggling incident happened "probably like the fourth day [of the cruise] or something like that." (ECF 102-1 at 13:14-18, 16:7-17). The fourth day of the cruise would have been August 27, 2019, i.e., the morning or afternoon before the assault on J.F., which occurred shortly after midnight on August 28, 2019.

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

authorized by CARNIVAL, as well as potentially violating laws prohibiting the possession of alcoholic beverages by minors. (ECF 102-1 at 13:23-24, 15:5-6, 15:20, 23:11-14). HORIZON security officers caught him and detained him in the ship's security office before releasing him to his grandmother's custody with a warning not to engage in further "incidents." No other enforcement of CARNIVAL policies or laws was undertaken. Zion Emery's grandmother testified that the CARNIVAL officers informed her that the smuggling attempt would be grounds under CARNIVAL policy to disembark Zion from the ship, but that the officers had decided instead to let him go with a warning and no other action. (ECF 102-1 at 13:23-24, 15:5-10, 15:20, 19:8-13, 19:25-20:11, 22:21-23:6, 23:11-14). These facts were unknown to J.F. and her parents.

On the night of August 27, 2019, J.F. met Zion Emery and a group of his companions. (ECF 87-1 at 78:6-22, 79:8-14). After midnight, ship's time, i.e., in the early morning of August 28, after Club O2 activities had ended, J.F., Zion Emery, and others in their group of adolescents were walking unsupervised through the corridors of the passenger decks. J.F. was walking toward her cabin because her family had given her a curfew of 1:00 A.M. (ECF 87-1 at 82:16-19). On the way to J.F.'s cabin, Zion Emery asked to stop in his cabin on Deck 6 so that he could pick up a phone charger. (ECF 87-1 at 82:17-23; ECF 87-4 at 190:21-193:9; ECF 87-11). While walking around the ship through the passenger deck corridors, no one in the

group saw any security officers or other CARNIVAL crewmembers. (ECF 87-1 at 79:23; ECF 87-6 at 130:17-20).

When the group reached Zion Emery's cabin, J.F. followed him inside to go to the bathroom, in order to obtain a tissue. (ECF 87-1 at 82:24-25, 86:18-23). Zion Emery and two other male passengers were then in the cabin with her, but no adults. As J.F. exited the bathroom, the male passengers locked and blocked the door so that she could not escape. Zion Emery and the others sexually assaulted J.F., violently performing acts including nonconsensual vaginal and oral intercourse. (ECF 87-1 at 83:1-2, 88:19-22, 89:7-10, 91:4-16, 91:24-92:2, 92:5-7, 94:9-10). In deposition Zion Emery admitted that oral sexual contact and digital vaginal penetration occurred that night between him and J.F., although he claims it was consensual. (ECF 87-6 at 38:12-15, 42:16-44:16, 48:5-17).[2]

In discovery, CARNIVAL disclosed that there had been 102 reports of passenger on passenger sexual misconduct, throughout the CARNIVAL passenger cruise fleet, during the three years before the assault on J.F. (ECF 87-2 at 147:12-17, 147:21-148:2, 150:6-151:1; ECF 102-2). At least 54 of those 102 incidents of sexual misconduct occurred in passenger cabins. (ECF 102-2). CARNIVAL below

---

[2] CARNIVAL below took the position that the sexual assault was not foreseeable to it even assuming J.F.'s account of the events to be true and "undisputed,", although CARNIVAL simultaneously did dispute her account and did deny that she was assaulted. (ECF 94 at 2n.1). Thus, there was a dispute as to this fact.

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

attempted to minimize some of these incidents and portray them as irrelevant because some involved allegations of various forms of sexual misconduct, such as "groping or unwanted touching, incest, incidents where a person could not recall what happened but may have been assaulted, incidents that began with consent but the consent was withdrawn … ." (ECF 127 at 3-4 ¶139). In depositions CARNIVAL's corporate representative and its former Vice-President of Security Dominick Froio conceded that CARNIVAL knew sexual assaults and misconduct were more likely to occur in passenger cabins than in public areas of the ship, due to the natural inclination of passengers contemplating unlawful activity to seek "privacy." (ECF 87-2 at 146:24-147:6, 196:11-15; ECF 87-10 at 68:24-69:7, 70:15-20, 106:25-107:10). They also acknowledged understanding that a visible presence of security officers would serve to deter onboard crime. Mr. Froio testified that he would recommend additional roving patrols on vessels where there was a pattern of assaults in passenger cabins. (ECF 87-2 at 197:24-198:16; ECF 87-10 at 52:13-18, 53:3-8,79:21-24, 118:19-24, 120:7-11). He also testified that during his ten year tenure as CARNIVAL's Vice-President of Security, he consistently requested additional security officers because "you always want more" and "more is better," and because those additional officers would provide additional security visibility on board to deter unlawful activity. Mr. Froio's experience was that his request "sometimes" fell "on deaf ears" because of CARNIVAL management's "other

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

priorities." (ECF 87-10 at 48:13-14, 49:10-11, 51:21-52:7, 53:3-8, 53:10-19, 53:23-24, 54:1-2, 59:12-14, 59:20-21, 60:21-22, 66:11-14, 97:8-18).

Before the assault on J.F., CARNIVAL required sexual predator detection training for its crew. (ECF 87-9 at 99:2-100:12). CARNIVAL engaged the nonprofit organization RAINN (Rape and Incest Network) to audit its sexual assault prevention policies, and since 2016 had adopted what it claimed to be proactive measures such as screening passengers against a sexual predator list and barring those on the list from boarding. (ECF 87-2 at 175:11-14; ECF 87-10 at 19:13-20:7, 88:19-89:9, 89:14-16, 89:19-90:12, 129:11-13).

J.F. sued CARNIVAL for its negligence contributing to the sexual assault on her. (ECF 1, ECF 11). CARNIVAL moved for summary judgment, arguing that the assault on J.F., which it denied had occurred, was unforeseeable to it as a matter of law. (ECF 93 at 8-14, ECF 94 at 2n.1). J.F. responded in opposition, arguing that the assault was indeed foreseeable, and CARNIVAL replied. (ECF 113, ECF 114, ECF 126, ECF 127).

On December 27, 2023, the district court entered an "Order on Defendant's Motion for Summary Judgment," holding that the assault on J.F. was not reasonably foreseeable to CARNIVAL. The court held that "the lack of foreseeability defeats Plaintiff's claim that Defendant owed her a duty of care to protect her and warn her against the particular harm that she suffered" and that the lack of foreseeability "also

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

defeats the causation element of Plaintiff's negligence claims." (ECF 186 at 13).

The court accordingly entered summary judgment in favor of CARNIVAL. (ECF 186, ECF 187). This timely appeal followed. (ECF 188).

## SUMMARY OF ARGUMENT

**WHERE CARNIVAL ADMITTED TO RECEIVING REPORTS OF 102 INCIDENTS OF PASSENGER ON PASSENGER SEXUAL MISCONDUCT, FLEETWIDE, DURING THE THREE YEARS PRIOR TO THE SEXUAL ASSAULT ON J.F., AND 54 OF THOSE 102 INCIDENTS OCCURRED IN PASSENGER STATEROOMS AS THE ASSAULT ON J.F. DID, THE DISTRICT COURT ERRED IN HOLDING THE ASSAULT UNFORESEEABLE TO CARNIVAL AS A MATTER OF LAW AND ACCORDINGLY ENTERING SUMMARY JUDGMENT FOR CARNIVAL.**

J.F. is appealing from an adverse summary judgment. When considering CARNIVAL's summary judgment motion, the district court was required to view the record evidence in the light most favorable to J.F. as the nonmovant, and, drawing all reasonable inferences in her favor, determine whether there was a genuine issue of material fact for trial.

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

The law regarding proof of notice and foreseeability in cases involving assaults on cruise ship passengers is clear that foreseeability may be proved specifically, by showing the cruise line's knowledge that a particular assailant was likely to commit an assault on a given passenger at a particular time, or more generally. General foreseeability may be established by proof of prior substantially similar incidents, from which the cruise line knows or should know of the likelihood of a given type of assault on its passengers. General foreseeability may also be proved circumstantially, through evidence of the cruise line's ineffective attempts to address the hazard, implying that the cruise line knows of its seriousness. The same standards regarding the evidence necessary to establish the foreseeability of an assault apply at the pleading stage, when the issue is what facts regarding foreseeability must be pled, and at the summary judgment stage, where the issue is what the record materials on file disclose regarding foreseeability.

CARNIVAL's own records document and its corporate representative in deposition acknowledged that there were some 102 instances of sexual misconduct by CARNIVAL passengers against fellow CARNIVAL passengers, during the three-year period before the assault on J.F. The majority of these sexual misconduct incidents, 54, occurred in passenger staterooms, as the assault on J.F. did; CARNIVAL's corporate representative

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

conceded the common-sense notion that most passengers contemplating

unlawful activity would seek to conduct it in "privacy," and CARNIVAL's

former Vice-President of Security Dominick Froio also acknowledged his

own experience that the majority of onboard sexual assaults did occur in

passenger staterooms. In prior case law from this court, twenty incidents over

five years have been deemed sufficient to establish foreseeability, so 54 or

102 incidents over three years should be sufficient.

CARNIVAL below attempted to minimize many of the prior incidents by

arguing that not every incident met the strict FBI definitions of sexual assault or

rape; the reports concerned a variety of forms of serious sexual misconduct by

passengers toward fellow passengers, such as "groping," "unwanted touching,"

"incidents where a person could not recall what happened but may have been

assaulted," and "incest." (ECF 127 at 3-4 ¶139). All of the prior reports, however,

deal with forms of nonconsensual sexual contact, offensive and damaging to the

passenger victim whether or not the events meet a strict FBI definition of a particular

type of misconduct. From the reports, CARNIVAL knows that such incidents occur

frequently on its cruise ships and that they are more likely to occur in the privacy of

a passenger cabin as the assault on J.F. did.

Other evidence of CARNIVAL's knowledge of the risk of sexual

assault on its passengers comes from the requests of its own former Vice-

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

President of Security for additional security resources and CARNIVAL's attempts, albeit unsuccessful, to address the issue of passenger sexual assaults. Furthermore, assailant Zion Emery was intercepted the afternoon before the assault attempting to smuggle unauthorized alcohol onto the ship, but was let off with a warning rather than being disembarked, detained, or monitored, thus retaining the opportunity a few hours later to meet and assault J.F.

Despite its knowledge of the risk of sexual assaults on its passengers and knowledge of the importance of a visible security presence to deter unlawful activity, CARNIVAL on the night of the assault deployed only seven (eight according to CARNIVAL) security officers for a ship of fifteen decks with a passenger capacity of 3900, of whom only three were available to patrol the fifteen decks. Due to this inadequate coverage, neither J.F., Zion Emery, or any of Zion Emery's male companions encountered or saw any security presence while they were on their way to what ultimately became the sexual assault on J.F., so they were neither intercepted nor deterred from their unlawful conduct.

The district court below failed to consider the totality of the foreseeability evidence, and failed as required to draw all inferences regarding that evidence in favor of J.F. The court therefore erred in entering summary judgment.

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

# ARGUMENT

**WHERE CARNIVAL ADMITTED TO RECEIVING REPORTS OF 102 INCIDENTS OF PASSENGER ON PASSENGER SEXUAL MISCONDUCT, FLEETWIDE, DURING THE THREE YEARS PRIOR TO THE SEXUAL ASSAULT ON J.F., AND 54 OF THOSE 102 INCIDENTS OCCURRED IN PASSENGER STATEROOMS AS THE ASSAULT ON J.F. DID, THE DISTRICT COURT ERRED IN HOLDING THE ASSAULT UNFORESEEABLE TO CARNIVAL AS A MATTER OF LAW AND ACCORDINGLY ENTERING SUMMARY JUDGMENT FOR CARNIVAL.**

## Standard of Review

This appeal is taken from a final summary judgment entered pursuant to Rule 56, Federal Rules of Civil Procedure. This rule allows entry of summary judgment when the materials filed in support of the motion demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). An issue of fact is "genuine" when the record materials on file, considered as a whole, could lead a rational trier of fact to find for the non-moving party, and "material" if it might affect the outcome of the case under

the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).

"The moving party bears the initial burden to show the district court, by

reference to materials on file, that there are no genuine issues of material fact that

should be decided at trial." "Only when that burden has been met does the burden

shift to the non-moving party to demonstrate that there is indeed a material issue of

fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604,

608 (11th Cir. 1991).

When a district court rules on a motion for summary judgment, "All

reasonable inferences arising from the undisputed facts should be made in favor of

the nonmovant," although inferences based purely on speculation or conjecture are

not deemed reasonable. *Chapman v. American Cyanamid Co.*, 861 F.2d 1515, 1518

(11th Cir. 1988). At the summary judgment stage, the court "must view all evidence

and factual inferences in favor of [the nonmovant]. *Brady v. Carnival Corp.*, 33 F.4th

1278, 1283 (11th Cir. 2022), *citing Guevara v. NCL(Bahamas) Ltd.*, 920 F.3d 710,

722 (11th Cir. 2019).

**Considered as a Whole, the Record Materials Filed Below Demonstrate**

**at least a Genuine Issue of Fact as to the Foreseeability of the Sexual Assault**

**on J.F., where CARNIVAL Admitted Knowing about 102 Incidents of**

**Passenger on Passenger Sexual Misconduct on its Cruise Ships during the**

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

### Three Years before the Assault on J.F., of which 54 Occurred in Passenger Staterooms as the Assault on J.F. did.

This Circuit recognizes at least two distinct methods by which the foreseeability to a cruise line of an assault on passengers may be proved. First, the passenger or claimant may produce evidence of specific foreseeability, that is evidence tending to show that the cruise line knew or should have known of the propensity of specific perpetrator or group of perpetrators to commit an assault on the passenger. Alternatively, the passenger may present evidence of general foreseeability, evidence that the cruise line knew or should have known of the risk of crime of a particular type at a particular location generally but failed adequately to address that known risk.

In *Chaparro v. Carnival Corporation*, 693 F.3d 1333 (11th Cir. 2012), the decedent, a passenger on a CARNIVAL vessel, was invited by a CARNIVAL employee to visit Coki Beach on St. Thomas in the Virgin Islands during the vessel's stop at St. Thomas. While visiting Coki Beach as suggested by the CARNIVAL employee, the passenger was caught in crossfire during a gang related shooting at a gang member's funeral and was killed. Among other arguments, CARNIVAL urged the court on a 12(b)(6) motion to hold the shooting and death unforeseeable as a matter of law. This Court rejected this argument and held that foreseeability had

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

been established at least for pleading purposes where Chaparro had alleged: CARNIVAL's efforts to monitor crime in its ports of call, including St. Thomas and Coki Beach; CARNIVAL's consequent knowledge of the general frequency of gang related violence at Coki Beach; and CARNIVAL's actual or constructive knowledge of the gang member funeral leading to the shooting. *Chaparro*, 693 F.3d at 1336-37. Thus, in *Chaparro*, the Court acknowledged the foreseeability to a cruise line of third party criminal attacks on its passengers, where the facts establish the cruise line's actual or constructive knowledge of the risk of crime. Such knowledge can be demonstrated by actual or constructive knowledge of the general risk to passengers of the relevant type of crime, based on statistics or reports, knowledge of facts suggesting a specific risk of criminal attack, or, as in *Chaparro*, a combination of both general and specific foreseeability,

Likewise, in *K.T. v. Royal Caribbean Cruises, Ltd.*, 931 F.3d 1041 (11th Cir. 2019), this Court held pleading sufficient where K.T. alleged that, while a minor passenger on a Royal Caribbean cruise ship, she was provided alcoholic beverages by adult male passengers in the observable view of Royal Caribbean crew members. Once K.T. was intoxicated, the male passengers took her to a stateroom and sexually assaulted her. Significantly, K.T. also pled Royal Caribbean's general knowledge of the risk of alcohol-related crimes to its passengers, including that it "anticipated and foresaw that crimes would be perpetrated on passengers aboard its vessels … ."

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

*K.T.*, 931 F.3d at 1046. The court held that the pleading of foreseeability, which as in *Chaparro* combined allegations supporting both specific and general foreseeability, was sufficient. *Id.* A concurrence[3] added to the general foreseeability analysis by discussing cruise ship crime statistics maintained by the Department of Transportation, demonstrating both Royal Caribbean's general knowledge of the incidence of sexual assault on its vessels and Royal Caribbean's acknowledgement in those statistics of receiving at least "20 complaints of sexual assaults committed by passengers" over the five years from 2010 to 2015. *K.T.*, 931 F.3d at 1047-49. *See also McIlwain v. Royal Caribbean Cruises, Ltd.*, 2023 U.S. Dist LEXIS 109238 at *12, *15 2023 WL 4117109 (S.D. Fla. Case No. 22-CV-24025-PCH), *citing K.T.* (Noting that in *K.T.*, twenty reports of sexual assault over a five year period were deemed sufficient to make the risk of sexual assault reasonably foreseeable to Royal Caribbean and stating that "As plaintiff notes, the Eleventh Circuit has relied on reports of past sexual assault to find such harm reasonably foreseeable.").

Thus, both *Chaparro* and *K.T.* stand for the proposition that the foreseeability of an assault to a cruise line may be specific, based on knowledge of the particular assailant, or general, based on relevant past reports or statistics reflecting substantially similar prior events, or both. While the opinions in *Chaparro* and *K.T.*

---

[3] Both the majority opinion and the concurrence were written by the Honorable Ed Carnes.

dealt with the sufficiency of pleadings rather than with evidence produced in support of or opposition to summary judgment, the standards for proving foreseeability are the same whether a court is considering the adequacy of the facts alleged to establish foreseeability or the sufficiency of the summary judgment record to establish those facts or at least to create a genuine issue as to the facts. In both situations, what the assaulted passenger must both allege and ultimately present is evidence establishing specific foreseeability, general foreseeability, or both. Furthermore, this court has applied both the specific and general foreseeability standards to an appeal from a summary judgment and has not limited application of those standards to cases involving pleading. *See Fuentes v. Classica Cruise Operator Ltd.*, 32 F.4th 1311 (11th Cir. 2022).

The Court in *Fuentes*, on which CARNIVAL relied below, considered both specific and general foreseeability as did the courts in *Chaparro* and *K.T.* The *Fuentes* court noted that Classica lacked advance notice that the particular assailant in that case would assault Fuentes during disembarkation. *Fuentes*, 32 F.4th at 1318-19. The court, however, did not limit the foreseeability analysis to Classica's lack of specific foreknowledge of the particular assailant's propensity to assault Fuentes, noting more broadly that "in the context of passenger-on-passenger violence, a cruise line has a duty to warn and/or protect when it or its employees reasonably apprehend the danger such that the attack was foreseeable" and that constructive

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

"notice may be established through evidence of previous similar incidents or the cruise line's prior warnings regarding the specific danger." Id. at 1317, 1319, *citing Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1272, 1288-89 (11th Cir. 2015). The *Fuentes* court noted that on the record before it, proof of constructive notice through evidence of prior substantially similar incidents could not be established, given that there was "not a single [previous] documented violent altercation between passengers during disembarkation" on a Classica cruise vessel. *Fuentes*, 32 F.4th at 1319. It was this absence of evidence of prior substantially similar incidents, relevant to the issues of general foreseeability and constructive notice, not the absence of advance notice of the particular assailant's propensity for violence, that was in the view of the *Fuentes* court the "most important aspect of the summary judgment record ... ." Id. at 1319.

In *H.S. v. Carnival Corp.*, 727 Fed. Appx. 1003 (11th Cir. 2018), this court distinguished *Chaparro* by pointing out that in *Chaparro*, allegations that "Carnival was aware of gang-related violence and crime, including public shootings, in St. Thomas generally and near Coki beach specifically" "established that [the] injury was reasonably foreseeable to Carnival and created a basis for imposing on the carrier a duty to warn of the risk of danger." *H.S.*, 727 Fed. Appx. at 1006, *citing Chaparro*, 693 F.3d at 1336. In *H.S.*, by contrast, "H.S. alleged no facts to support a plausible inference that Carnival was aware of teenage boys sexually assaulting

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

teenage girls on its vessels or, more specifically, that teenage girls were leaving the youth nightclub, visiting peers' staterooms unchaperoned, and being sexually abused." *H.S.*, 727 Fed. Appx. at 1006. Thus, while the court in *H.S.* did hold the pleading of specific foreseeability in that case to be insufficient, the court also found the allegations of CARNIVAL's general awareness of "teenage boys sexually assaulting teenage girls on its vessels" to be insufficient. The pleading of general foreseeability in *H.S.*, unlike the pleading of general foreseeability in *Chaparro* and *K.T.*, was insufficient. In *Chaparro* and *K.T.*, both types of foreseeability were found to be adequately pled, but in *H.S.*, as in *Fuentes*, both types of foreseeability were found to be inadequately pled (in *H.S.*) or proved (in *Fuentes*).

Thus, *Fuentes*, like *Chaparro*, *K.T.* and even *H.S.*, stands for the proposition that the foreseeability of passenger-on-passenger crime to a cruise line may be established either by demonstrating the cruise line's actual or constructive notice of a particular assailant's propensity criminally to assault other passengers, by demonstrating the cruise line's actual or constructive knowledge of the risk to passengers of a particular type of crime in general through prior reports or statistics, or both. These standards for establishing foreseeability apply both at the pleading stage, as in *Chaparro* and *K.T.*, and at the summary judgment stage at issue in *Fuentes* and the present case. In *Fuentes* the Court analyzed the case under both

standards and found both types of evidence to be lacking, but in the present case both exist.

First, CARNIVAL's own records document and its corporate representative in deposition acknowledged that there were some 102 instances of sexual misconduct by CARNIVAL passengers against fellow CARNIVAL passengers, during the three-year period before the assault on J.F. The majority of these sexual misconduct incidents, 54, occurred in passenger staterooms, like the assault on J.F. Moreover, CARNIVAL's corporate representative conceded the common-sense notion that most passengers contemplating unlawful activity would seek to conduct it in "privacy," and CARNIVAL's former Vice-President of Security Dominick Froio also acknowledged his own experience that the majority of onboard sexual assaults did occur in passenger cabins.

In *K.T.*, twenty prior reports of sexual assault by passengers over five years, fleetwide, sufficed to establish the foreseeability to Royal Caribbean of similar assaults in the future. In this case, there were 102 fleetwide reports, or 54 counting only incidents occurring in passenger cabins, over three years; more reports over a shorter period than those deemed in *K.T.* sufficient to establish foreseeability.

CARNIVAL attempted to minimize many of the prior incidents by arguing that not every incident met the strict FBI definitions of sexual assault or rape and that the reports concerned a variety of forms of serious sexual misconduct by

passengers toward fellow passengers, such as "groping," "unwanted touching," "incidents where a person could not recall what happened but may have been assaulted," and "incest." (ECF 127 at 3-4 ¶139). All of the prior reports, however, deal with forms of nonconsensual sexual contact, offensive and damaging to the passenger victim whether or not the events meet a strict FBI definition of a particular type of criminal offense. Certainly incest, assaults on a victim incapacitated to the point of being unable to recall precisely what occurred, and even nonconsensual "groping" are unacceptable forms of sexual misconduct. Based on the reports, CARNIVAL knows that such incidents occur frequently on its cruise ships and that they are more likely to occur in the privacy of a passenger cabin as the assault on J.F. did.

When evaluating the substantial similarity of prior incidents for the purpose of establishing foreseeability or notice, the "'substantial similarity'" doctrine does not require identical circumstances, and allows for some play in the joints depending on the scenario presented and the desired use of the evidence." *Sorrels*, 796 F.3d at 1287. The "salient issue" regarding foreseeability and notice is whether the cruise operator "knew, more generally," that the material hazard had a "reasonable tendency" to occur. *See Brady*, 33 F.4th at 1281.

J.F. also notes that the allegations in *H.S.* itself provided CARNIVAL with notice of the risk of sexual assaults on minors, in passenger cabins, by fellow

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

passengers, which are the material circumstances in J.F.'s case. Even if the court were inclined to apply a "one bite" rule to allegations of passenger-on-passenger sexual assault, the bite has now occurred through CARNIVAL's knowledge of the allegations in *H.S.*

In addition to all the other forms of notice and foreseeability explained above, CARNIVAL below acknowledged contracting with consultants such as the RAINN organization in an attempt to develop policies, albeit ineffective ones, to address sexual assault on its vessels, such as screening prospective passengers to exclude known sexual predators. CARNIVAL's promulgation of policies attempting, albeit ineffectively, to address the risk of passenger-on-passenger sexual assault is itself further circumstantial evidence that CARNIVAL knows the risk is present in general. *See Brady*, 33 F.4th at 1283, *citing Carroll v. Carnival Corp.*, 955 F.3d 1260, 1265 (11th Cir. 2020)("As we've explained before, '[e]vidence that a ship owner has taken corrective action can establish notice of a dangerous or defective condition.'"); *Guevara*, 920 F.3d at 722 ("a cruise ship operator has notice of a condition – and thus a duty to warn – if a sign is posted on a ship warning about the condition.").

With regard to the specific risk posed by Zion Emery, Mr. Emery was caught by CARNIVAL crewmembers attempting to smuggle contraband alcoholic beverages on board through an X-ray machine, by concealing a bottle of alcohol under his clothing, and detained for a period in a security office once caught. The

contraband smuggling attempt was in violation both of CARNIVAL policy and of law, particularly given that Mr. Emery was only seventeen and hence under legal drinking age at the time. CARNIVAL policy called for CARNIVAL to bar him from reboarding the vessel for this smuggling attempt; if CARNIVAL had followed its own policies and barred Mr. Emery from reboarding he would not have been on the vessel that night to encounter and assault J.F. Instead, Mr. Emery was allowed to continue on board with a simple and obviously inadequate warning not to engage in any other "incidents." Furthermore, after reboarding he was allowed to visit various areas of the ship, such as Club O2, without any monitoring or supervision by ship's security, despite the actual knowledge of CARNIVAL security officers that he was willing to and had violated both law and CARNIVAL policy. Quarantine or curfew would easily have been available to CARNIVAL to protect innocents from the risk of harm posed by Mr. Emery.

During the late night shift when J.F. was assaulted, there were only seven (or eight, according to CARNIVAL) security officers deployed for a vessel with a passenger count of over 3900 and fifteen decks. Three officers were posted to fixed positions in the ship's adult nightclub, while one was posted to fire watch duty, leaving at most three officers even potentially available for a roving patrol of the fifteen decks. As J.F.'s expert Charles Kinnear noted, there was no curfew for teens or younger children after Club O2 activities ended, and teens were not allowed in

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

adult facilities such as the nightclub, leaving them with no supervision during late nights after Club O2 closed.

CARNIVAL suggests that some of the officers posted to fixed assignments could have been reassigned to roving patrol duties but does not indicate that this measure was ever undertaken. Former Vice-President of Security Dominick Froio over a ten year period repeatedly requested additional security officers and passed on such requests from others, but noted that his requests frequently fell on "deaf ears" due to management's "other priorities" and budgetary constraints, requiring a "game of chess" in an effort to maintain adequate security deployments on any particular vessel at any particular time. Neither J.F. nor assailant Zion Emery saw any security officers at all while they were walking with J.F. on the way to his cabin.

CARNIVAL objected below that the absence of security in the passenger hallways was not a proximate cause of the ensuing sexual assault inside Zion Emery's cabin. CARNIVAL argued that there would have been no indication to hypothetical patrolling security officers, even if any had been present, that anything was amiss and hence no occasion for those hypothetical officers to intervene. CARNIVAL overlooks both the known deterrent function of a visible security presence, admitted both by its corporate representative and by its former Vice-President of Security, and the context at the time when J.F. and the group of male companions were approaching Zion Emery's cabin.

First, it is hardly surprising that sexual predators intending to lure a passenger into a private area such as a cabin for nonconsensual sexual activity would take care not to signal their intentions in advance, either to the intended victim herself, to passersby, or to any hypothetical security officers or other crew members they may have encountered on the way. Indeed, CARNIVAL's corporate representative acknowledged that passengers contemplating criminal activity would ordinarily seek to commit that act in an undetectable private location, and Mr. Froio conceded that the majority of onboard sexual assaults did occur inside passenger cabins. It is thus unsurprising that, as CARNIVAL argued below, J.F. did not feel or infer that she was in any danger from Zion Emery or his male companions until she was already inside the locked cabin and unable to leave. The absence of advance signaling by the assailants of their intentions does not make their intentions any less real.

Secondly, a hypothetical security officer encountering the group of young male passengers accompanying J.F. would at a minimum have seen a group of teenage passengers walking in a corridor on the ship at or after approximately 1:00 am ship's time. Even assuming arguendo that no one in the group was overtly displaying any intention to commit unlawful activity, the very presence of minor passengers outside their cabins at that late hour would provide the hypothetical security officer with grounds at least to speak to the group and attempt to ascertain their destination and intentions, particularly in light of CARNIVAL's knowledge of

the prevalence of sexual assaults in passenger cabins on its ships and the hypothetical officer's knowledge that Club O2 was closed. Such an interaction with an onboard security officer would serve to remind all members of the group that security was present and accordingly to deter any unlawful activity inside the cabin, whether planned in advance or engaged in impulsively or spontaneously. A directive to security officers to escort teens back to their families in such circumstances would likely have protected J.F. and other teen passengers in similar circumstances.

Third, even in the absence of questioning or other interaction or intervention, the mere visible presence of one or more security officers near or on the way to Zion Emery's cabin would have served to deter his and his companion's unlawful activity, as both CARNIVAL's corporate representative and former Vice-President of Security Froio conceded. He and his male companions would have been aware of the presence of security nearby even after they entered the cabin and would accordingly have been deterred both from planned and spontaneous sexual misconduct.

In addition, J.F. should not have encountered Zion Emery on the night of the assault at all. When boarding the ship after a shore excursion before the night of the assault, he had attempted to smuggle alcoholic beverages on board, been caught by onboard security officers, detained, and had been subject under CARNIVAL policies to being barred from reboarding or disembarked. CARNIVAL, however, failed to

enforce its own protective policies; after CARNIVAL crewmembers caught him attempting to smuggle contraband on board, they failed to keep him off the ship, disembark him, or even monitor his movements on board. CARNIVAL knew that Zion Emery was breaking both its rules and the law and should not be allowed on the ship but allowed him to continue on board, unsupervised except possibly by his family members, anyway. Had CARNIVAL simply enforced its own policy against allowing passengers to smuggle contraband on board by barring Zion Emery from boarding when he was caught, he would not have been on board to meet J.F., lure her to his cabin, and assault her.

Thus, evidence produced by CARNIVAL itself demonstrated that the sexual assault on J.F. in Zion Emery's stateroom was foreseeable to it; specifically sexual assaults and serious sexual misconduct occurring in passenger cabins are foreseeable to it, and Zion Emery's disregard for ship's rules became apparent when he was caught attempting to smuggle contraband onto the HORIZON. Further evidence of foreseeability comes from CARNIVAL's unsuccessful attempts to address passenger on passenger sexual misconduct on its ships and the historical requests for additional security resources from CARNIVAL's own Vice-president of Security. CARNIVAL could have prevented the sexual assault on J.F. through the acknowledged deterrent effect of roving security officer patrols in passenger corridors, where they would have been seen by the assailants and deterred any

planned or even spontaneous criminal activity.  Instead, the security deployment at

the time of the assault was woefully inadequate, so CARNIVAL's negligence did

proximately contribute to the assault.

## **CONCLUSION**

The district court below misconstrued and misapplied the governing law of this Circuit regarding the foreseeability to cruise ship operators of passenger on passenger assaults. Under that governing law and the evidence produced by CARNIVAL itself in discovery, including the 54 incidents of sexual misconduct in passenger cabins over the three years before J.F. was assaulted, the requests by its own former Vice-President of Security for additional security presence on its ships, and the efforts CARNIVAL undertook, albeit unsuccessfully, to address the issue of passenger on passenger sexual assault, the sexual assault on J.F. was foreseeable to it or there is at least a genuine issue of fact as to notice and foreseeability. The district court failed to construe this record in the light most favorable to J.F. and thereby erred in entering summary judgment. The judgment in favor of CARNIVAL should be reversed and the case remanded for further proceedings.

Respectfully submitted,

s/EDWARD S. SCHWARTZ

EDWARD S. SCHWARTZ
Florida Bar No. 346721
eschwartz@gslawusa.com
filing@gslawusa.com
zdiaz@gslawusa.com
GERSON & SCHWARTZ, P.A.
Attorneys for Appellant
1980 Coral Way
Miami, FL 33145-2624
Telephone: (305) 371-6000

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

## **CERTIFICATE OF COMPLIANCE**

**I HEREBY CERTIFY** that this brief complies with the type-volume

limitation as set forth in Rule 32(a)(7(B), Federal Rules of Appellate Procedure.

This brief has been prepared using Times New Roman 14-point typeface and

contains 7212 words, within the permissible maximum of 13,000 words.

s/**EDWARD S. SCHWARTZ**
EDWARD S. SCHWARTZ
Florida Bar No. 346721
eschwartz@gslawusa.com
filing@gslawusa.com
zdiaz@gslawusa.com
GERSON & SCHWARTZ, P.A.
Attorneys for Appellant
1980 Coral Way
Miami, FL 33145-2624
Telephone:  (305) 371-6000

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all attorneys of record on the attached Service List, pursuant to the electronic filing system of the Court of Appeals for the Eleventh Circuit, on this 3rd day of April, 2024.

**s/EDWARD S. SCHWARTZ**
EDWARD S. SCHWARTZ
Florida Bar No. 346721
eschwartz@gslawusa.com
filing@gslawusa.com
zdiaz@gslawusa.com
GERSON & SCHWARTZ, P.A.
Attorneys for Appellant
1980 Coral Way
Miami, FL 33145-2624
Telephone: (305) 371-6000

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

## SERVICE LIST
## J.F. v. CARNIVAL CORPORATION

### ELEVENTH CIRCUIT CASE NO. 24-10259

### DISTRICT COURT CASE NO. 1:22-cv-21332-JEM

| | |
|---|---|
| **Philip M. Gerson, Esq.**<br>Florida Bar No. 127290<br>pgerson@gslawusa.com<br>**Nicholas I. Gerson, Esq.**<br>Florida Bar No. 20899<br>ngerson@gslawusa.com<br>**Edward S. Schwartz, Esq.**<br>Florida Bar No. 346721<br>eschwartz@gslawusa.com<br>**David L. Markel, Esq.**<br>Florida Bar No. 78306<br>dmarkel@gslawusa.com<br>filing@gslawusa.com<br>**GERSON & SCHWARTZ, P.A.**<br>1980 Coral Way<br>Miami, Florida 33145<br>Telephone:(305) 371-6000<br>Facsimile:(305) 371-5749<br>***Attorneys for Appellant*** | **William R. Seitz, Esq.**<br>Florida Bar No. 73928<br>**wseitz@maselaw.com**<br>**Curtis J. Mase, Esq.**<br>Florida Bar No. 478083<br>**Cmase@maselaw.com**<br>**Lauren N. Cabeza, Esq.**<br>Florida Bar No. 1025668<br>**lcabeza@maselaw.com**<br>**Charlotte Robinson, Esq.**<br>crobinson@maselaw.com<br>**Tyler Rauh, Esq.**<br>Florida Bar No. 1023404<br>trauh@maselaw.com<br>**MASE SEITZ BRIGGS, P.A.**<br>2601 South Bayshore Drive, Suite 800<br>Miami, Florida 33133<br>Tel: (305) 377-3770<br>Fax: (305) 377-0080<br>***Attorneys for Appellee*** |

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com