# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

## CASE NO.: 24-10259
## LT CASE NO.: 22-cv-21332-JEM

**J.F.,**

Appellant-Plaintiff,

v.

**CARNIVAL CORPORATION,**

Appellee-Defendant.

On appeal from the United States District Court for the
Southern District of Florida

---

## BRIEF OF THE APPELLEE
## CARNIVAL CORPORATION

---

**MASE SEITZ BRIGGS, P.A.**
**2601 S. Bayshore Drive, Suite 800**
**Miami, Florida 33133**
**Tel: (305) 377-3770**
**Fax: (305) 377-0080**
**CURTIS J. MASE**
**Florida Bar No. 478083**
**WILLIAM R. SEITZ**
**Florida Bar No. 73928**
**TYLER J. RAUH**
**Florida Bar No. 1023404**

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Becerra, The Honorable Jacqueline — United States District Judge

Cabeza, Lauren — Counsel for Appellee/Defendant

Carnival Corporation d/b/a Carnival Cruise Lines (NYSE Ticker "CCL") — Appellee/Defendant

Gerson, Nicholas — Counsel for Appellant/Plaintiff

Gerson, Philip — Counsel for Appellant/Plaintiff

Gerson & Schwartz, P.A. — Counsel for Appellant/Plaintiff

J.F. — Appellant/Plaintiff

Martinez, The Honorable Jose E. — United States District Judge

Mase, Curtis — Counsel for Appellee/Defendant

Mase Seitz Briggs, P.A. — Counsel for Appellee/Defendant

Rauh, Tyler — Counsel for Appellee/Defendant

Robinson, Charlotte — Counsel for Appellee/Defendant

Schwartz, Edward — Counsel for Appellant/Plaintiff

Seitz, William — Counsel for Appellee/Defendant

## **CORPORATE DISCLOSURE STATEMENT**

CARNIVAL CORPORATION (NYSE Ticker "CCL") discloses that there are no parent corporations or publicly held corporations that hold ten percent or more of Carnival Corporation's stock.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not required for the just resolution of this appeal.

# TABLE OF CONTENTS

Statement of Jurisdiction...........................................................................1

Statement of the Issues............................................................................2

Statement of the Case.............................................................................3

Statement of the Facts........................................................................3

Course of Proceedings .......................................................................6

Standard of Review............................................................................7

Summary of the Arguments ....................................................................8

Arguments ...........................................................................................10

I.     Carnival had no duty to protect against or warn of the assault. ...................10

A.   To impose a duty on a cruise line to protect against or warn of an assault, the particular assault must be reasonably foreseeable. ...............................10

B.   J.F.'s general foreseeability theory is unsupported by *K.T.* or *Chaparro* and was rejected in *Fuentes*. ...............................................................12

i.    *Chaparro*'s foreseeability allegations were particularized to the funeral and gang violence in Coki Beach. ...........................................................12

ii.   Allegations in *K.T.* were particular to those assailants publicly intoxicating that plaintiff-victim. ..................................................................15

iii.  Neither *Chaparro* nor *K.T.* support a generalized foreseeability theory. 17

C.   The subject assault was not reasonably foreseeable because the three assailants posed no danger in public. .........................................................18

II.   Even assuming Carnival had a duty for greater security, a lack of security did not actually or proximately cause the sexual assault....................................26

A.   J.F. cannot satisfy either causation prong. ..................................................26

i.   Carnival's conduct was not a cause-in-fact of the assault.......................26

ii.   There is no proximate cause because the assault superseded any of Carnival's hypothetical negligence. .........................................................28

B.   The Hypothetical Security Officer is too speculative to establish proximate causation....................................................................................................29

III.   Mr. Emery's contraband incident did not make his violence foreseeable. ...33

Conclusion .............................................................................................................35

Certificates of Compliance and Service...................................................................36

# **TABLE OF AUTHORITIES**

## **Cases**

*Brady v. Carnival Corp.*,

 33 F.4th 1278 (11th Cir. 2022) ........................................................25

*Brown v. NCL (Bahamas) Ltd.*,

 No. 15-21732, 2016 WL 8716482 (S.D. Fla. Oct. 13, 2016) ................. 21, 26

*Caron v. NCL (Bahamas) Ltd.*,

 910 F.3d 1359 (11th Cir. 2018) ....................................................37

*Carroll v. Carnival Corp.*,

 955 F.3d 1260 (11th Cir. 2020) ....................................................25

*Chaparro v. Carnival Corp.*,

 693 F.3d 1333 (11th Cir. 2012) ............................................. passim

*Colon v. Twitter, Inc.*,

 14 F.4th 1213 (11th Cir. 2021) ....................................................31

*Decker v. Gibson Prod. Co. of Albany*,

 679 F.2d 212 (11th Cir. 1982) ....................................................31

*Exxon Co. U.S.A. v. Sofec, Inc.*,

 517 U.S. 830 (1996)...............................................................28

*\*Fuentes v. Classica Cruise Operator, Ltd.*,

 32 F.4th 1311 (11th Cir. 2022) ............................................. passim

*Guevara v. NCL (Bahamas) Ltd.*,

 920 F.3d 710 (11th Cir. 2019) ........................................................25

*\*H.S. ex rel. R.S. v. Carnival Corp.*,

 727 F. App'x 1003 (11th Cir. 2018) ...................................... passim

*Horne v. Carnival Cruise Lines*,

 No. 15-21031, 2016 WL 4808791 (S.D. Fla. Jan. 25, 2016) ................ 21, 26

*In re Complaint of Royal Caribbean Cruises, Ltd.*,

 991 F. Supp. 2d 1171 (S.D. Fla. 2013) ........................................... 28, 35, 37

*K.T. v. Royal Caribbean Cruises, Ltd.*,

 931 F.3d 1041 (11th Cir. 2019) ............................................. passim

*Keefe v. Bahama Cruise Line, Inc.*,

 867 F.2d 1318 (11th Cir. 1989) ....................................................11

*King v. King*,

 69 F.4th 738 (11th Cir. 2023) ........................................................7

*Moser v. Texas Trailer Corp.*,

 623 F.2d 1006 (5th Cir. 1980) ......................................................28

*Prather v. NCL Bahamas Ltd.*,

 No. 19-21832, 2020 WL 4501809 (S.D. Fla. June 19, 2020) ......................36

*Sorrels v. NCL (Bahamas) Ltd.*,

 796 F.3d 1275 (11th Cir. 2015) ....................................................26

*Tonelli v. NCL (Bahamas) Ltd.*,

    428 F. Supp. 3d 1313 (S.D. Fla. 2019)................................................... 34, 35

*Wiegand v. Royal Caribbean Cruises*,

    No. 21-12506, 2023 WL 4445948 (11th Cir. July 11, 2023).......................31

*Worthington v. U.S.*,

    21 F.3d 399 (11th Cir. 1994) .......................................................................31

**Rules**

Fed. R. Civ. P. 56 ....................................................................................................7

**Treatises**

57A Am. Jur. 2d Negligence § 564 (May 2023 update)........................................29

Restatement (Second) of Torts § 344, cmt. f ........................................................10

Restatement (Third) of Torts: Physical and Emotional Harm, § 7(a), cmt. j ..........12

Restatement (Third) of Torts: Physical and Emotional Harm, § 30, cmt. b............29

*Thomas Schoenbaum, *Admiralty and Maritime Law*, §§ 5.4–5.5 (6th ed. &
    2021 update)...................................................................... 10, 28, 29, 30

William Prosser, *The Law of Torts*, § 41 (4th ed. 1971) ........................................28

## STATEMENT OF JURISDICTION

Carnival agrees with and adopts J.F.'s Statement of Subject Matter and Appellate Jurisdiction.

## STATEMENT OF THE ISSUES

I.  A passenger-on-passenger assault must be reasonably foreseeable to impose a duty on a cruise line to protect against it. To satisfy the foreseeability requirement, J.F. points only to previous sexual assault allegations that did not involve the three teenage boys who assaulted her. Did the court err in concluding that the prior incidents did not make the assault on J.F. reasonably foreseeable?

II. Even assuming Carnival had a duty to have greater security, as argued by J.F., Carnival's breach of that duty must have caused the assault to impose liability. To support causation, J.F. suggests that a hypothetical security officer might have deterred the assailants if this hypothetical officer encountered the assailants during the few minutes that they were walking with J.F. to the subject stateroom. Is J.F.'s causation argument too speculative?

III. Liability can lie for a breach of duty only if the claimed injury was a foreseeable consequence of the breach. J.F. contends Carnival should be liable for the sexual assault because Carnival did not deny reboarding to Zion Emery after catching the then-seventeen-year-old trying to sneak alcohol onboard. Was the sexual assault a reasonably foreseeable consequence of Zion Emery trying to sneak contraband onboard?

## STATEMENT OF THE CASE

### Statement of the Facts

J.F. cruised on the *Carnival Horizon* for a week starting on August 24, 2019. [D.E. 87-1 at 10:6–8]. During the cruise, J.F. regularly participated in Club 02, which is the activity group for passengers aged fifteen through seventeen. [D.E. 87-1 at 46:1–2] and [D.E. 87-2 at 114:9–19]. J.F. claims she was sexually assaulted by a group of three teenage boys whom she met through Club 02: Zion Emery, Daniel Prianti, and Jesus (who was never specifically identified). [D.E. 87-1 at 53:11–14] and [D.E. 94 at ¶¶ 76–79].

Daniel and Zion met J.F. on the first day of the cruise, and she had no issues with them during the initial three days. [D.E. 87-7 at 19:9–20:24]. Zion and J.F. had only a few minor interactions in Club 02. [D.E. 87-6 at 15:3, 28:6–8, 35:19–24] and [D.E. 87-1 at 69:13–70:22]. Likewise, Daniel saw J.F. every day of the cruise, either in passing or in Club O2, but they did not talk much. [D.E. 87-7 at 11:21–23, 21:5–13, 22:17–22]. They all got along and had no issues until the incident began. [D.E. 87-7 at 14:23–15:1].

The subject assault occurred mid-cruise, at around 1:00 AM on August 28. [D.E. 87-1 at 53:11–14]. After Club O2 activities ended on August 27, J.F. walked around the ship with a group of teenagers that did not include Zion, Daniel, or Jesus. [D.E. 87-1 at 63:1–5]. But as midnight approached, J.F. met Zion, Daniel, and Jesus

3

on the Lido Deck in a lounge area among a group of teenagers. [D.E. 87-1 at 78:6–22, 79:8–14]. J.F. and the other teenagers were "just sitting and talking." [D.E. 87-1 at 79:16–17]. No one in the group did anything that made J.F. feel unsafe. [D.E. 87-1 at 79:21–23].

When the group split up, J.F. got pizza with Zion, Daniel, Jesus, and two others. [D.E. 87-1 at 80:1–5, 82:2–7]. There were no problems while the group ate. [D.E. 87-1 at 82:10–15]. When J.F. realized it was almost 1:00 AM, which is the time she needed to check in with her parents, she told the group that she had to return to her room. [D.E. 87-1 at 82:16–19]. They offered to accompany J.F., but Zion asked that they stop by his room on the way to grab a phone charger. [D.E. 87-1 at 82:17–23]. The group of six then entered the elevator to go from the Lido Deck to Zion's stateroom on Deck 6. [D.E. 87-4 at 190:21–193:9] and [D.E. 87-11].

Neither Zion, Daniel, nor Jesus tried to touch J.F. in an inappropriate manner while they were walking together in public. [D.E. 87-1 at 89:25–90:5]. J.F. did not ask any crewmembers for help or otherwise call out for help before reaching Zion's stateroom. [D.E. 87-1 at 85:3–5]. J.F. felt safe on the *Carnival Horizon* from the moment the cruise started until she was inside Zion Emery's stateroom. [D.E. 87-1 at 72:5–7, 73:9–11, 84:21–85:2, 116:2–5].

Upon reaching Zion's stateroom, J.F. followed Zion inside to get a tissue from his restroom, and then Daniel and Jesus followed her. [D.E. 87-1 at 82:24–25, 86:18–23]. When J.F. exited the restroom, J.F. saw Daniel lock the door while Zion and Jesus were near a bed; the other two teenagers were no longer present. [D.E. 87-1 at 83:1–2, 88:19–22, 89:7–10].

After seeing Daniel lock the door, J.F. asked, "what are you doing?" before one of the boys told her to "shut up." [D.E. 87-1 at 89:20–24]. J.F. panicked and tried to go toward the door to leave, but Jesus picked her up and put her on a bed. [D.E. 87-1 at 90:16–23]. Jesus was kissing J.F. and trying to force himself on her despite J.F. pushing him off and telling him to stop. [D.E. 87-1 at 91:4–16]. One of them then picked J.F. off that bed and put her on the other bed. [D.E. 87-1 at 91:16–22]. Daniel took J.F.'s pants off and penetrated her vaginally while Zion penetrated her orally; Jesus was by himself on the other bed. [D.E. 87-1 at 92:5–16]. Daniel eventually pulled out, slapped J.F.'s buttocks, and said "switch." [D.E. 87-1 at 93:14–18].[1]

_____

[1] Although Carnival conceded to these alleged facts for purposes of summary judgment, both Daniel and Zion dispute that the assault occurred and have significantly different versions of events. *See generally* [D.E. 94 at ¶¶ 53–75].

Before anything else occurred, J.F. got up, grabbed her clothing, and left the stateroom. [D.E. 87-1 at 93:17–18, 94:17–20]. No one attempted to stop J.F. from leaving after the sexual assault ended. [D.E. 87-1 at 93:16–18]. The incident lasted approximately ten minutes. [D.E. 87-1 at 92:17–20].

During the subject incident, there were twenty security personnel on the *Carnival Horizon*: seventeen Security Officers, two Assistant Chief Security Officers, and one Chief Security Officer. [D.E. 87-9 at 24:4–12]. Seven Security Officers worked per shift. [D.E. 87-9 at 58:4–11]. The Chief Security Officer and Assistant Chief Security Officer consistently monitored whether Security Officers needed to be reassigned to high-risk areas, such as where people were congregating. [D.E. 87-9 at 59:18–60:8, 63:9–13, 79:17–81:5]. Carnival Security Officers also did a roving detail where they focused on lounges, including Club 02. [D.E. 87-2 at 117:1–9].

## Course of Proceedings

J.F. asserts negligent security and negligent failure to warn theories against Carnival for the alleged sexual assault. *See* [App'x, 16-2 at 31–37]. J.F. also raised a vicarious liability theory for the Club 02 employees' failure to prevent the assault. [*Id.* at 37–42].

Carnival moved for complete summary judgment on both counts. [D.E. 93].[2] J.F. substantively responded only to the arguments relating to direct liability, [D.E. 113], to which Carnival replied. [D.E. 126].

The district court granted summary judgment on duty and causation grounds for the direct negligence theories and on various grounds for the vicarious liability claim. [App'x, 16-3 at 8–21]. Final judgment was entered the next day, [*Id.* at 23], and J.F. timely filed a notice of appeal. [*Id.* at 25]. On April 3, 2024, J.F. submitted the Appellant's Brief, which did not challenge the district court's holding on vicarious liability; instead, J.F. argues only for reversal of summary judgment on the direct negligence claim in Count I of her complaint.[3]

## Standard of Review

The Court reviews de novo the grant of summary judgment. *See King v. King*, 69 F.4th 738, 742 (11th Cir. 2023). Summary judgment is appropriate where "there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a).

---

[2] J.F. also raised allegations relating to a fight that occurred days later between J.F. and another teenaged passenger. [D.E. 11 at ¶ 26, ¶ 38]. After Carnival moved for summary judgment, J.F. withdrew the fight-related claims. [D.E. 152].

[3] All page citations to Appellant's Brief will be according to the CM/ECF header.

## SUMMARY OF THE ARGUMENTS

Carnival had no duty to protect against or warn of the sexual assault because the particular assault was not reasonably foreseeable. In fact, J.F. does not argue that the particular assault was foreseeable; she instead contends that summary judgment is inappropriate because sexual assaults are generally foreseeable onboard cruise ships. This Court, however, has rejected the same generalized foreseeability argument: a cruise line cannot be liable for failing to protect against a passenger-on-passenger attack unless the cruise line could reasonably apprehend that the particular attack was going happen with time to prevent it. To survive summary judgment on the duty element, J.F. needs evidence that the particular assault was reasonably foreseeable, but there is no such evidence.

A lack of foreseeability is also fatal to causation. Even assuming Carnival had a duty to have a greater security force onboard, the assailants' criminal actions superseded any hypothetical breach of that duty. No matter the number of Security Officers, none would have been able to apprehend that Zion, Daniel, and Jesus were about to assault J.F. in the stateroom because, as J.F. testified, the three teenage boys did not pose a dangerous condition until they were in the stateroom. Thus, even if the Court assumes that Carnival had a duty to hire more Security Officers, breaching that duty could not be a proximate cause of J.F.'s alleged injuries.

To support causation, J.F. relies on three thought experiments involving a hypothetical Security Officer who would have encountered the assailants in the ship's corridors if Carnival had hired this hypothetical person. J.F. contends that the assailants would have been deterred from committing the sexual assault after this hypothetical encounter, presumably in fear of getting caught. But this theory is too speculative to defeat summary judgment. J.F. stacks unsupported inferences to reach grand conclusions as to what the assailants might have done if they happened to encounter this hypothetical Security Officer in the few minutes that they were walking with J.F. to Zion Emery's stateroom. Summary judgment is appropriate because such speculative inferences cannot establish proximate causation.

In her last argument, J.F. contends that she should not have even encountered Zion Emery on the night of the assault because Carnival had a duty to bar him from reboarding the ship after catching him with alcohol. This argument substantively fails on two grounds: (1) Carnival had no duty to deny reboarding, and (2) the sexual assault is too attenuated from the contraband incident to establish causation. In other words, even assuming Carnival had a duty to deny his reboarding, the sexual assault was not a foreseeable consequence of allowing him to reboard, which precludes liability for a breach. Zion Emery's unforeseeable criminal act superseded any breach of duty committed by Carnival, including the hypothetical duty to deny boarding to him.

## ARGUMENTS

I.     **Carnival had no duty to protect against or warn of the assault.**

A.  **To impose a duty on a cruise line to protect against or warn of an assault, the particular assault must be reasonably foreseeable.**

A cruise line can be negligently liable only if it fails to use reasonable care under the circumstances. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012). To determine what duties are required by the circumstances, "'a court must examine and weigh the probability of an accident, the potential extent of the injury, and the cost of adequate protections.'" *See Fuentes v. Classica Cruise Operator, Ltd.*, 32 F.4th 1311, 1317 (11th Cir. 2022) (quoting 1 Thomas Schoenbaum, *Admiralty and Maritime Law* § 5:4 (6th ed. & 2021 update)). No duty will exist under general maritime law unless the cruise line knew or should have known of the risk-creating condition that caused the particular injury. *See id.*

Applied to cases involving a passenger-on-passenger attack, reasonable care requires a cruise line to protect against or warn of the attack only when the cruise line could "reasonably apprehend the danger such that the attack was foreseeable." *Id. See also* Restatement (Second) of Torts § 344, cmt. f ("Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur."). A lack of foreseeability and a lack of actual or constructive notice are dipositive in this case.

This Court clarified in *Fuentes* that, when the risk-creating condition is passenger-on-passenger violence, the foreseeability inquiry requires particularized evidence and cannot be applied "at too high a level of generality . . . ." *See* 32 F.4th at 1318. Cruise lines often carry thousands of passengers during a voyage, and passengers interact "in countless numbers of ways during the trip . . . ." *Id.* If the foreseeability analysis is too high and generalized across those mass numbers, then the cruise line would be rendered "'an insurer'" of its passengers' safety, rendering Carnival subject to strict liability for every passenger-on-passenger attack. *See id.* (quoting *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989)).

Taken together, for negligent security and failure to warn claims arising from passenger-on-passenger violence, "the foreseeability determination must have some connection to the events that gave rise to the negligence claim." *See id.* The plaintiff-victim of a passenger attack "cannot avoid summary judgment on some generalized theory of foreseeability that is divorced from the particular events in question." *See id.* (citing Restatement (Third) of Torts: Physical and Emotional Harm, § 7(a), cmt. j)) ("The extent of foreseeable risk depends on the specific facts of the case and cannot be usefully assessed for a category of cases."). The plaintiff must show that the "particular injury" imposed by the specific assailant was "reasonably foreseeable" to the cruise line "in time" to prevent the injury. *See id.* at 1317–19 (citing *H.S. ex rel. R.S. v. Carnival Corp.*, 727 F. App'x 1003, 1006 (11th

11

Cir. 2018) and *K.T. v. Royal Caribbean Cruises, Ltd.*, 931 F.3d 1041, 1045 (11th Cir. 2019)).

**B.    J.F.'s general foreseeability theory is unsupported by *K.T.* or *Chaparro* and was rejected in *Fuentes*.**

J.F. suggests she can survive summary judgment by providing evidence showing that Carnival could "generally" foresee the risk of sexual assaults onboard. Specifically, she contends Carnival could foresee the sexual assault on J.F. because there had been fifty-four alleged sexual assaults in Carnival staterooms during the previous three years across approximately twenty-six cruise ships. *See* Appellant's Brief at 23–26. In support of this "general foreseeability" theory, J.F. primarily relies on *Chaparro v. Carnival Corp.* and *K.T. v. Royal Caribbean Cruises, Ltd.* But neither case supports this general foreseeability theory, and both cases are procedurally and substantively distinguishable.

> i.    Chaparro's *foreseeability allegations were particularized to the funeral and gang violence in Coki Beach.*

*Chaparro* analyzed whether negligent failure to warn and negligent infliction of emotional distress theories were plausible on a motion to dismiss; there was no negligent security issue. *See* 693 F.3d at 1337–38. It was a wrongful death claim that arose from a Carnival employee suggesting that the decedent go to Coki Beach, St. Thomas, via an open-air bus. While traveling to Coki Beach, the bus was stuck in traffic on a narrow road due to a funeral procession for a gang member who

infamously died in a recent shooting near Coki Beach. Gunfire erupted at the funeral, and the decedent was fatally wounded in the crossfire. *See id.* at 1335.

The plaintiffs in *Chaparro* alleged many reasons why Carnival should have foreseen the risk of violence at the funeral:

> Carnival was familiar with Coki Beach because it sold excursions to passengers to Coki Beach; Carnival generally knew of gang violence and public shootings in St. Thomas; Carnival knew of Coki Beach's reputation for drug sales, theft, and gang violence; Carnival knew or should have known of the gang member's shooting and funeral taking place near Coki Beach; [and] Carnival knew or should have known of these dangers because Carnival monitors crime in its ports of call . . . .

And, despite all that alleged knowledge, "a Carnival employee encouraged the Appellants to visit Coki Beach in St. Thomas." *See id.* at 1337.

The plaintiffs' claims were based on "Carnival's negligence in encouraging its passengers to visit Coki Beach and in failing to warn disembarking passengers of general and specific incidents of crime in St. Thomas and Coki Beach . . . ." *See id.* at 1335. The Court held that the complaint was sufficient to survive the pleading stage due to the allegations that Carnival actually knew of gang violence in the area and actually knew of the funeral: discovery might have produced evidence showing that Carnival should have foreseen the particular dangerous condition—the funeral shooting—that killed the decedent based on the alleged actual knowledge of "gang-related violence and crime, including public shootings, in St. Thomas generally and near Coki Beach specifically." *See id.* at 1337.

In support of her general foreseeability theory, J.F. takes the "generally" language from *Chaparro* out of context. *See* Brief at 23–24. Although the plaintiff pled that Carnival knew of the gang violence and public shootings in "St. Thomas generally," the risk-creating condition in *Chaparro* was the shooting itself. *See* 693 F.3d at 1335. And, to support the negligent failure to warn claim, the plaintiff alleged that Carnival knew about the particular funeral and the risk of gang violence in Coki Beach "specifically." Here, the district court was correct to distinguish *Chaparro* substantively: the allegations in *Chaparro* were not generalized like the fifty-four sexual assault allegations at issue here; instead, they were tailored to the risk of gang violence erupting at that specific place in Coki Beach and at that specific time.

*Chapparo* is also procedurally distinguishable because it never reached the summary judgment stage. *Chaparro* analyzed only whether there was a plausible claim on a motion to dismiss. If Carnival knew of the dangers in Coki Beach that day, then there could be a plausible duty to warn of those dangers or a plausible claim for negligent infliction of emotional distress due to the employee recommending that the decedent go on the bus tour. However, this Court remarked that Carnival's argument regarding foreseeability would be "more appropriate after discovery at the summary judgment stage or at trial." *See Chaparro*, 693 F.3d at 1337. Because the instant case is post-discovery, the district court was correct to distinguish *Chaparro* on procedural grounds, too. *See* App'x, 16-3 at 18.

14

>    ii.    Allegations in K.T. *were particular to those assailants*
>           *publicly intoxicating that plaintiff-victim.*

*K.T.* is similarly distinguishable on procedural and substantive grounds. Procedurally, like *Chaparro*, the allegations in *K.T.* were never tested on summary judgment. And substantively, the foreseeability allegations in *K.T.* were far more specific to the particular risk-creating condition.

In *K.T.*, a minor was sexually assaulted after being "steered" to a stateroom by nearly a dozen adult male passengers after the males "plied her with enough alcohol that she became . . . 'obviously incapacitated.'" *See* 931 F.3d at 1043. They were giving her alcohol "in a public lounge and other public areas of the ship . . . in the view of multiple" cruise line employees, including security officers. *See id.* The plaintiff alleged that the sexual assault was foreseeable to Royal Caribbean because the employees actually saw the males intoxicate the victim and then actually saw them steer her toward the stateroom while she was obviously intoxicated. The plaintiff also alleged that the risk of sexual assault was foreseeably "enhanced" onboard because minors had easy access to "copious quantities of alcohol." *Id.* at 1044. Royal Caribbean moved to dismiss for a lack of plausible foreseeability, but the Eleventh Circuit held that the allegations about the intoxication and steering happening in direct view of the employees could be enough for the assault to be foreseeable. *See id.* at 1044–45.

J.F. applies *K.T.* too broadly. Nowhere in this Court's opinion did it conclude that "twenty prior reports of sexual assault by passengers over five years, fleetwide, sufficed to establish the foreseeability to Royal Caribbean of similar assaults in the future." *Compare* Brief at 29 *with K.T.*, 931 F.3d at 1044–45. Instead, the sufficient foreseeability allegations related to K.T. being plied with alcohol in view of Royal Caribbean's crew, Royal Caribbean allegedly knowing that minors had easy access to copious alcohol, and Royal Caribbean knowing that the risks of sexual assault are enhanced when adults provide minors with alcohol:

> In sum, the complaint has sufficiently alleged that because Royal Caribbean's crewmembers did nothing to prevent the large group of men from plying K.T. with enough alcohol to incapacitate her and did nothing to stop those men from leading her away to a private cabin, Royal Caribbean breached the duty of ordinary care it owed her.

*Id.* at 1045.

J.F. conflates the special concurrence in *K.T.* with the Court's actual holding. Indeed, the concurrence discussed data that "reinforced" and "supplement[ed] the allegations" in the complaint. *See id.* at 1047–50. But the Court's holding as to plausible foreseeability hinged on allegations relating to the assailants publicly incapacitating the plaintiff and leading her away to the stateroom "in the view of multiple Royal Caribbean crewmembers and still under surveillance by the ship's security cameras." *See id.* J.F. incorrectly argues that twenty prior reports "sufficed" to establish foreseeability; the reports were never even mentioned in the holding.

> iii. *Neither* Chaparro *nor* K.T. *support a generalized foreseeability theory.*

The complaints in *Chaparro* and *K.T.* were sufficient to survive the pleading stage because they both alleged facts suggesting that the defendant had knowledge of the particular dangers causing those plaintiffs to suffer the "same type of harm" that they actually suffered. *See Fuentes*, 32 F.4th at 1318–19 (analyzing *Chapparo* and *K.T.*). This Court clarified in *Fuentes* that the foreseeability inquiry "cannot be divorced from the particular events in question." *See id.* at 1318. And it harmonized *Chaparro* and *K.T.* by noting that those plaintiffs alleged particularized knowledge of the particular third-party conduct that gave rise to the particular injury suffered: knowledge of the funeral for an infamous gang member amidst rampant public shootings in Coki Beach, and cruise line employees witnessing multiple male adults supplying the plaintiff-victim with alcoholic drinks before steering her toward a stateroom. *See id.* at 1318–19.

The allegations in *Chaparro* and *K.T.* were tied to foreseeability of the specific risk-creating conditions; only for that reason could the cruise line potentially be liable for the victims suffering from those third-party attacks. There is no support in either case, however, that the claims survived based on categorical "past reports or statistics," as J.F. suggests. *See* Brief at 25.

J.F.'s theory of general foreseeability is not supported by general maritime law, *Chaparro*, or *K.T.* and was expressly rejected in *Fuentes*. By relying on only prior incidents, the foreseeability inquiry that J.F. advocates for is at "too high a level of generality and ignores too many variables"—such as how many hundreds of thousands of teenagers "physically congregate and interact with each other" throughout Carnival's fleet without violence arising. *See* 32 F.4th at 1318. To survive summary judgment in the context of passenger-on-passenger attacks, the foreseeability inquiry requires particularized evidence. Specifically, J.F. needs evidence that Carnival could foresee the particular attack on her and not merely evidence that Carnival knows generalized statistics about "sexual assault" allegations.

## C. The subject assault was not reasonably foreseeable because the three assailants posed no danger in public.

Under *Fuentes*, the following should be the applicable foreseeability inquiry: could Carnival reasonably apprehend the danger that Zion Emery, Daniel Prianti, and Jesus posed to J.F. before she entered Zion Emery's stateroom?

It is undisputed that the boys were not an apparent danger in public. J.F. testified that she had known the boys since the first day of the cruise and they had never made her feel unsafe or uncomfortable during those early days. [D.E. 87-1, 57:5–14, 69:8–72:19]. On the fourth night, J.F. spent time with all three in an

18

outdoor lounge area among a group of between ten and twenty teenagers. [*Id.* at 78:6–22, 79:8–14]. Everyone was just casually sitting and talking. [*Id.* at 79:16–17]. No one in the group did anything to make J.F. feel unsafe. [*Id.* at 79:21–23]. Eventually, at around midnight, the group split up; J.F. went with the three boys, an unknown female, and another boy named Jaden to get pizza on Deck 12 and then walk around the ship. [*Id.* at 80:1–5, 82:2–7].

J.F. repeatedly reiterated that there were no safety concerns while getting pizza or walking the corridors. [*Id.* at 82:10–15, 84:21–85:5, 116:2–5]. Then, sometime after midnight but before 1:00 AM, J.F. told the group that it was near her curfew and that she was going to check in with her parents. [*Id.* at 82:17–19]. The group offered to accompany J.F., but Zion wanted to stop by his stateroom to grab a phone charger. [*Id.* at 82:19–23]. Upon reaching Zion's stateroom, J.F. freely and voluntarily followed Zion inside to grab a tissue from the restroom, and then Daniel and Jesus entered behind J.F. [*Id.* at 86:18–23]. After J.F. exited the restroom, she saw Daniel lock the door while the other two boys were near the bed. [*Id.* at 88:19–89:10]. It was only at this point that J.F. first felt unsafe. [*Id.* at 84:24–85:2]. At no point prior did any of the boys attempt to touch her, kiss her, or otherwise act inappropriately. [*Id.* at 89:25–90:4].

Carnival could not reasonably apprehend that the three boys were dangerous in time to prevent what happened next. As J.F. testified, there were no apparent concerns in the ship's public areas while she was in Club O2 on Deck 4, lounging and eating pizza on Deck 12, or walking the ship's corridors to Zion's stateroom on Deck 6. The assailants were not an apparent dangerous condition until they had locked the door to the stateroom. Thus, even upon viewing all evidence in a light most favorable to J.F., Carnival could not know that the boys posed a danger in time to intervene.

Carnival cannot prevent an assault in a stateroom unless something happened in public to indicate that the assailant(s) posed a risk or there was sufficient noise coming from the assault. *See Brown v. NCL (Bahamas) Ltd.*, No. 15-21732-CIV, 2016 WL 8716482, *8–9 (S.D. Fla. Oct. 13, 2016) (analyzed at length in D.E. 93 at 13–14); *Horne v. Carnival Cruise Lines*, Case No. 15-21031-civ-ALTONAGA, 2016 WL 4808791, *5 (S.D. Fla. Jan. 25, 2016) (finding an issue of fact because the assailants stalked the victim to the stateroom and because the neighboring stateroom occupants heard "distressing sounds" and called security twice while the assault occurred). Unlike the *Brown* and *Horne* assailants, Zion, Daniel, and Jesus never posed a danger in public, and there is no evidence that J.F made any noise to make the assault noticeable to Carnival. Nothing in public indicated that this particular assault was about to happen or was happening.

20

A near-identical issue arose in *H.S.*, 727 F. App'x 1003 (11th Cir. 2018). The plaintiff was a fourteen-year-old girl at the time of her cruise, and she was allegedly sexually assaulted in a stateroom by two teenage boys. *See id.* at 1004. Like this case, the plaintiff met and had spent significant time with the alleged assailants in the teen club before the alleged assault. But unlike this case, the plaintiff alleged that she and the assailants were intoxicated and that there were repeated sexual acts—which the plaintiff resisted—in view of cruise line employees. *See id.* In response to a motion to dismiss, the plaintiff argued that these allegations were sufficient for the cruise line to have notice that the assailants posed a danger to her, but the district and appellate courts disagreed. *See id.* at 1005–06.

This Court affirmed that the plaintiff in *H.S.* failed to allege facts sufficient for Carnival to be "aware of teenage boys sexually assaulting teenage girls on its vessels or, more specifically, that teenage girls were leaving the youth nightclub, visiting peers' staterooms unchaperoned, and being sexually assaulted." *Id.* at 1006. Carnival could not reasonably expect that the plaintiff would be assaulted based on a teenage boy's attempt to sexually touch the victim within Club 02. *See id.* at 1004. In other words, as a matter of law, publicly viewable sexual activity does not mean that subsequent *violence* is foreseeable, even when the teenage boys' advances were one-sided, rejected, and inappropriate. There was no plausible claim without facts to support that Carnival could reasonably foresee violence in the stateroom.

21

The same rationale applies here—in fact, as to foreseeability, the allegations in *H.S.* were far worse than the evidence in this record. There is no evidence that Zion, Daniel, and Jesus were sexual with J.F. in public, like what happened in *H.S.* Even more importantly, the plaintiff in *H.S.* alleged that she rejected the sexual advances in front of the cruise line's employees, which suggested that the employees should have seen her discomfort. Here, in contrast, J.F. testified that the assailants never attempted to touch her, kiss her, or otherwise act inappropriately in public. If the allegations in *H.S.* were insufficient to plausibly plead foreseeability on a Rule 12(b)(6) motion, then the evidence here is insufficient, too.

In a two-sentence paragraph, J.F. argues that *H.S.* itself provides "notice of the risk of sexual assaults on minors, in passenger cabins, by fellow passengers . . . ." *See* Brief at 30–31. J.F. contends that *H.S.* triggers a "one-bite" rule, arguing that Carnival can foresee all teenager-on-teenager assaults in staterooms after the allegation in *H.S.* was raised. *See* Brief at 31. But J.F. is warping the foreseeability inquiry for a negligence claim under general maritime law. This is not a case where strict liability applies after one incident like a dog bite. To so hold would improperly render a cruise line an insurer of safety instead of merely holding it liable for negligently breaching a duty of reasonable care. *See Fuentes*, 32 F.4th at 1318.

J.F.'s "one-bite" argument makes the same mistake as the plaintiff did in *Fuentes*; and after the "one-bite" argument, J.F. uses the same faulty reasoning for a different point. J.F. argues that Carnival knew about the "general risk" of sexual assault onboard because it consulted with RAINN to develop policies relating to responding to sexual assault allegations. *See* Brief at 31. The issue, however, is not whether Carnival knew that sexual assaults could happen "in general." *See id.* Rather, the dispositive inquiry is whether Carnival knew or should have known that Zion, Daniel, and Jesus posed a danger to J.F. such that Carnival could reasonably foresee her particular injury with time to prevent it. *See Fuentes*, 32 F.4th at 1317.

In *Fuentes*, this Court reasoned that a physical confrontation is not automatically foreseeable because of a previous verbal confrontation or because verbal arguments might turn into fights as a "behavioral and social matter." *See id.* at 1318. Similarly, teenagers entering a stateroom together does not automatically render a sexual assault foreseeable, even though, as a "behavioral and social matter," it is possible. *See id.* In other words, knowing of a previous allegation involving males assaulting a female in a stateroom (*H.S.*), or knowing that an assault is possible when teenagers enter a stateroom together, does not render J.F.'s particular injury reasonably foreseeable to Carnival. Given how many millions of people travel on cruise ships and enter staterooms without incident, Carnival cannot reasonably foresee violence whenever a group enters together.

J.F. loses sight of the risk-creating conditions in both *H.S.* and this case: the assailants themselves. It was not the stateroom that caused J.F.'s injury, so J.F. cannot show foreseeability by simply pointing to assaults that occurred in a stateroom. This is not a slip- or trip-and-fall case where foreseeability of the particular injury can be proven by pointing to knowledge that prior slips or trips occurred because of a substantially similar hazard. *See* Brief at 30–31 (citing *Brady v. Carnival Corp.*, 33 F.4th 1278, 1283 (11th Cir. 2022) (slip); *Carroll v. Carnival Corp.*, 955 F.3d 1260, 1265 (11th Cir. 2020) (trip); *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 722 (11th Cir. 2019) (slip); *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1287 (11th Cir. 2015) (slip)).

The foreseeability inquiry is unique when the injury is caused by human violence. *See Fuentes*, 32 F.4th at 1317 ("In the context of passenger-on-passenger violence, a cruise line has a duty to warn and/or protect when it or its employees reasonably apprehend the danger such that the attack was foreseeable."). Carnival cannot see a person's violent nature unless that particular person exposes their nature in a place where Carnival can reasonably see or hear it. A stateroom, however, prevents Carnival from seeing that nature unless something happened in public before the assailant entered the stateroom. *See Brown*, 2016 WL 8716482 at *8–9; *Horne*, 2016 WL 4808791 at *5.

The alleged events in *H.S.* and the fifty-four prior alleged incidents in staterooms did not make the assault on J.F. reasonably foreseeable. No prior incident involved Zion, Daniel, or Jesus; all prior incidents involved assailants whose violent propensities are "divorced from the particular events" in this case. *See Fuentes*, 32 F.4th at 1318. And thus, the allegations from *H.S.* and the other priors did not render J.F.'s particular injury reasonably foreseeable to Carnival.

\* \* \*

Carnival has a duty to warn of or protect against a passenger-on-passenger attack only if Carnival could reasonably apprehend that the attack was going to happen with time to prevent it. *See supra*, [Section I.A](#). The contrasting generalized foreseeability theory advocated for by J.F. was rejected in *Fuentes*, where this Court reiterated that the duty to protect extends only to particular injuries that are reasonably foreseeable. *See supra*, [Section I.B](#). Here, there is no genuine dispute that Carnival could not reasonably apprehend that the three boys were a danger to J.F. before they entered Zion Emery's stateroom, which means Carnival had no duty to protect J.F. from the assault or to warn of it. *See supra*, [Section I.C](#).

Because Carnival had no duty to warn of or protect against the subject assault, summary judgment is appropriate on the duty element of J.F.'s negligence claim against Carnival.

**II.** **Even assuming Carnival had a duty for greater security, a lack of security did not actually or proximately cause the sexual assault.**

Even if a cruise line breaches a duty of care, it will not be liable unless a plaintiff can prove that the breach "actually and proximately caused the plaintiff's injury." *See Chaparro*, 693 F.3d at 1336. Here, J.F. cannot establish either.

**A. J.F. cannot satisfy either causation prong.**

J.F. must satisfy two prongs for causation: (1) cause-in-fact and (2) proximate cause. *See* Schoenbaum, *supra*, at § 5.5. *See also In re Complaint of Royal Caribbean Cruises, Ltd.*, 991 F. Supp. 2d 1171, 1183 (S.D. Fla. 2013) (quoting *Exxon Co. U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 839 (1996)) (noting that federal courts sitting in admiralty are "guided by 'the extensive body of state law applying proximate causation requirements and from treatises and other scholarly sources.'").

*i.* *Carnival's conduct was not a cause-in-fact of the assault.*

Cause-in-fact means an injury occurred because of a defendant's act or omission. *See Moser v. Texas Trailer Corp.*, 623 F.2d 1006, 1012–13 (5th Cir. 1980) (citing W. Prosser, *The Law of Torts*, § 41, 238 (4th ed. 1971)). This is often framed as "but-for" causation; a leading treatise on the subject, however, suggests that "the better formulation" when multiple actors allegedly contributed to the injury is whether the defendant's act was a "substantial factor" in bringing about the plaintiff's harm. *See* Schoenbaum, *supra*, at § 5.5. Ultimately, though, "the two tests are quite similar," and J.F. fails to meet her evidentiary burden under both. *See id.*

J.F.'s primary theory to support causation is that Carnival Security failed to deter the sexual assault due to an insufficient number of Security Officers patrolling the passenger corridors. *See* Brief at 20 (claiming the sexual assault occurred due to "inadequate coverage" that failed "to deter unlawful activity"). But this theory fails to state a claim because a shipowner has no duty to deter criminal acts, as such deterrence is within the realm of criminal law and not tort. *See* Restatement (Third) of Torts: Physical and Emotional Harm § 30, cmt. b, *cited in* 57A Am. Jur. 2d Negligence § 564 (May 2023 update) ("Deterrence, it is true, can be obtained by criminal and regulatory systems, but those devices remain outside the tort system."). J.F.'s primary theory, therefore, attempts to invoke a duty that is beyond reasonable care under the circumstances, and it should be rejected as a matter of law.

Regardless, even assuming there was a duty for greater security onboard, J.F. provides no evidence to suggest that failing to have more security was a but-for cause or substantial factor in bringing about the assault. For example, nothing suggests that Carnival employing thirty Security Officers instead of twenty was a substantial factor. Instead, J.F. simply contends there was inadequate security in the corridors without elaborating as to what constitutes a proper level and how the assault was in fact caused by Carnival not reaching that (undefined) level. Under the first causation prong, J.F. fails to show that Carnival's purported lack of onboard security was a substantial factor in bringing about the assault.

27

ii. *There is no proximate cause because the assault superseded any of Carnival's hypothetical negligence.*

Proximate or legal cause is the second step of the causation analysis. Foreseeability is its "touchstone," meaning an injury must be "a reasonably probable consequence of the defendant's act or omission" for proximate cause to exist. *See* Schoenbaum, *supra*, at § 5.5 (citations omitted). Like the duty element, therefore, J.F. cannot show causation because the assault was not reasonably foreseeable: the assailants' criminal actions superseded any of Carnival's negligence and were the sole proximate cause of J.F.'s injuries.

The superseding cause doctrine applies when a defendant was negligent, and its negligence was a substantial contributing factor to the injury, "but the injury was actually brought about by a later cause of independent origin that was not foreseeable." *See id.* The lack of reasonable foreseeability "relieve[s] the defendant of any liability" if the third-party's acts are "so unusual, extraordinary, or bizarre" that the defendant's negligence, if any, could not be a proximate cause of the injury. *See Colon v. Twitter, Inc.*, 14 F.4th 1213, 1224 (11th Cir. 2021) (Florida law).

In the Eleventh Circuit, third-party criminal acts are generally superseding causes that break the chain of causation between a shipowner's negligence and the injury suffered. *See Wiegand v. Royal Caribbean Cruises*, No. 21-12506, 2023 WL 4445948, *4–5 (11th Cir. July 11, 2023) (citing *Decker v. Gibson Prod. Co. of*

*Albany*, 679 F.2d 212, 215 (11th Cir. 1982)). It is only "generally" the rule because a shipowner can be liable if the criminal act was foreseeable. *See id.* But a shipowner "providing the occasion" for another's crime is insufficient to impose liability; rather, the shipowner's negligence must "set in motion a chain of events culminating in injury to the plaintiff" for proximate cause to exist. *See Worthington v. U.S.*, 21 F.3d 399, 405 (11th Cir. 1994) (Florida law) (citations omitted).

Zion, Daniel, and Jesus's unforeseeable violence superseded any negligence that Carnival might have committed. No matter how many Carnival Security Officers were onboard and no matter their training, no Security Officer could have prevented the sexual assault because the three boys did nothing wrong until they were locked behind closed doors. The three assailants' actions were an unforeseeable intervening force and the sole proximate cause of J.F.'s injuries.

## B. The Hypothetical Security Officer is too speculative to establish proximate causation.

On appeal, as she did in her response to Carnival's motion for summary judgment, J.F. contends that a greater security force could have prevented the assault. She provides three thought experiments in which a fictional employee, The Hypothetical Security Officer, might have convinced the assailants not to assault J.F. *See* Brief at 34–35. But each hypothetical is conclusory, unsupported by evidence, and hinges on speculation.

J.F.'s first thought experiment actually supports the grant of summary judgment. J.F. notes that "passengers contemplating criminal activity would ordinarily seek privacy before committing an unlawful act . . . [and i]t is thus unsurprising that J.F. did not feel or infer that she was in any danger from Zion Emery or his male companions until she was already inside the locked stateroom and unable to leave." Brief at 34. Rather than helping J.F., this argument supports summary judgment because it shows that the assailants intentionally concealed their violent nature. As J.F. concedes, the sexual assault was committed in a location that was "undetectable" to Carnival and would be undetectable to The Hypothetical Security Officer. *See* Brief at 34. An undetectable danger, for purposes proximate cause, is synonymous with the danger being unforeseeable.

J.F. suggests that the assailants were already thinking of assaulting J.F. while in public and they would have changed their minds upon seeing The Hypothetical Security Officer. But J.F. provides no evidence to support that the three assailants' criminal actions inside the stateroom would be influenced by crossing paths with a Security Officer outside the stateroom. Also absent from J.F.'s argument is any indication as to how The Hypothetical Security Officer would have been able to surmise that the assault was about to occur without being telepathic. This first thought experiment has too much speculation and not enough evidence to establish proximate causation.

J.F.'s second thought experiment suggests that The Hypothetical Security Officer should have encountered the group while they were walking to Zion Emery's stateroom from the elevator. J.F. further argues that The Hypothetical Security Officer would have spoken to the group to "ascertain their destination and intentions," and "[s]uch an interaction with an onboard security officer would serve to remind all members of the group that security was present and accordingly to deter any unlawful activity inside the stateroom, whether planned in advance or engaged in impulsively or spontaneously." *See* Brief at 34–35. This argument is also too speculative.

In this second argument, J.F. is asking the Court to assume the following things are true: (1) reasonable care under the circumstances required Carnival to have more Security Officers; (2) if Carnival satisfied that duty, then The Hypothetical Security Officer would have encountered the group of teenagers in the little time that they were walking from the elevator to Zion Emery's stateroom; (3) The Hypothetical Security Officer had a duty to question the group despite the group not doing anything dangerous or noteworthy; and (4) The Hypothetical Security Officer's hypothetical questions would have deterred the assailants from committing the assault once they were behind closed doors. All four of these things must be true for The Hypothetical Security Officer to have any effect on the causation analysis, but J.F. cites no evidence to support this chain of events.

31

Such speculation is insufficient to defeat summary judgment. *See Tonelli v. NCL (Bahamas) Ltd.*, 428 F. Supp. 3d 1313, 1320–22 (S.D. Fla. 2019) (granting summary judgment because plaintiff's argument required "stacking inferences" that were not "established without question").

The third thought experiment fails for the same reasons as the second. J.F. contends that Carnival employing more security "would have served to deter [Zion Emery] and his companion's unlawful activity" because the assailants "would have been aware of the presence of security nearby even after they entered the stateroom and would accordingly have been deterred" from committing the sexual assault. *See* Brief at 35. Again, this argument fails on a threshold level for invoking a duty beyond reasonable care—Carnival has no duty to deter unforeseeable crimes.

But, regardless of the required duty, this third argument is unsupported and too speculative to support proximate causation. No evidence suggests that Zion, Daniel, or Jesus would have been deterred because they previously saw The Hypothetical Security Officer. J.F. merely assumes that all three assailants would simultaneously rethink and stop their attack, without even discussing it among themselves. This argument fails because it cannot be assumed that the assailants' behavior in private would have changed by virtue of The Hypothetical Security Officer patrolling the corridors. *See Tonelli*, 428 F. Supp. 3d at 1321 (citing *In re Royal Caribbean Cruises Ltd.*, 991 F. Supp. at 1183–84).

J.F.'s three arguments on pages 34 to 35 of her brief are too speculative to defeat summary judgment. Even assuming that reasonable care required greater security, summary judgment cannot be avoided by assuming that the assailants' behavior inside the stateroom would be altered by encountering The Hypothetical Security Officer in the few minutes they were to walking to Zion's stateroom. They are inferences too far. J.F. needs admissible evidence to create a genuine issue of material fact on causation, but she relies on only speculation and conjecture. Summary judgment should be affirmed for a lack of causation because the assault superseded any hypothetical breach of duty.

## III.     Mr. Emery's contraband incident did not make his violence foreseeable.

J.F. also contends that Carnival had a duty to debark Zion Emery or to monitor his movement once he was caught trying to sneak contraband onboard the ship and, if Carnival had done so, J.F. would not have been assaulted. *See* Brief at 35–36. For at least three reasons, this argument should be rejected.

First, Carnival had no duty to refuse carriage to Zion Emery after catching the then-seventeen-year-old with alcohol. Carnival's policy is that unpermitted alcohol will be confiscated without compensation, so it is unclear how J.F. concludes that Carnival was required to debark him pursuant to Carnival's "protective policies." *See* Brief at 35–36. Regardless, even if Carnival's policy was to deny boarding to such teenagers, Carnival has no legal duty to enforce its policies. *See Prather v. NCL*

*Bahamas Ltd.*, No. 19-21832-civ-MORENO/Louis, 2020 WL 4501809 at \*8–9 (S.D. Fla. June 19, 2020). In sum, Carnival had no legal duty to do anything with Zion Emery after catching him with alcohol.

Second, as *Fuentes* held, a plaintiff cannot avoid summary judgment on lack-of-foreseeability grounds by relying on previous events that are "divorced" from the "particular events" in question. *See* 32 F.4th at 1318. The contraband incident has no relevance to the sexual assault, as sexual assault is not "'naturally expected to occur'" after a teenager attempts to smuggle contraband onboard. *See id.* at 1317–18 (quoting *H.S.*, 727 F. App'x at 1006). The "mere possibility" of Zion Emery committing some later bad act is insufficient for Carnival to be held liable for not stopping him from boarding the vessel. *See In re Royal Caribbean Cruises Ltd.*, 991 F. Supp. 2d at 1183–84 (citations omitted). Because sexual assault is not a reasonably foreseeable consequence of a teenager trying to sneak contraband onboard, this theory of foreseeability is insufficient to defeat summary judgment.

Finally, allegations regarding Zion Emery attempting to smuggle contraband onboard are not raised as a basis for liability in the operative complaint. Accordingly, even if this argument had merit, it should be denied as an improper eleventh-hour allegation not traceable to the complaint. *See Caron v. NCL (Bahamas) Ltd.*, 910 F.3d 1359, 1370–71 (11th Cir. 2018) (citation omitted).

## CONCLUSION

Summary judgment should be affirmed on both duty and causation grounds. Carnival had no duty to warn of or protect against the sexual assault because the particular assault was not reasonably foreseeable. J.F.'s generalized foreseeability theory should be rejected, as it was in *Fuentes*, because general foreseeability would render Carnival an insurer of passenger safety in the privacy of their own staterooms.

But even if the Court assumes that Carnival had a duty to have a greater security force onboard, any breach of that duty was not a proximate cause of the alleged injuries. Third-party criminal acts are superseding causes unless the particular criminal act is foreseeable. And here, no evidence suggests that Carnival should have foreseen that Zion, Daniel, and Jesus would rape J.F. in a stateroom. J.F.'s argument that The Hypothetical Security Officer would have deterred the assault is too speculative to support proximate cause.

Finally, Zion Emery's contraband incident does not change the analysis. Carnival had no duty to deny reboarding to Zion Emery after catching him with alcohol; and, even if Carnival had such a duty, Zion committing a sexual assault was not a foreseeable consequence of Carnival breaching that duty. As with her other theories, J.F.'s reliance on the contraband incident fails on both duty and causation grounds.

Respectfully Submitted,

TYLER J. RAUH
Florida Bar No. 1023404
trauh@maselaw.com
MASE SEITZ BRIGGS, P.A.
2601 S. Bayshore Drive, Suite 800
Miami, Florida 33133
Tel: (305) 377-3770
Fax: (305) 377-0080
*Attorneys for Appellee*

## CERTIFICATES OF COMPLIANCE AND SERVICE

**Compliance.** This document complies with the word limit of FRAP 27(d) because, excluding the parts of the document exempted by FRAP 32(f), this document contains 8,272 words. This document also complies with the type-face requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).

**Service.** I certify that on June 3, 2024, this brief was filed with the Clerk of the Court using CM/ECF and served upon opposing counsel through that system and that four copies were sent to the Clerk of the Court by FedEx.

Dated:     June 3, 2024               /s/ *Tyler Rauh*
                                      TYLER J. RAUH